UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHARLES BERRY,

        Petitioner,

v.                         Case No: 2:14-cv-475-FtM-29MRM

SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,

        Respondents.[1]

_____

## OPINION AND ORDER

This matter comes before the Court upon a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Jose Luis Morales ("Petitioner") who is presently confined at the Apalachee Correctional Institution in Sneads, Florida (Doc. 1, filed August 15, 2014).  Petitioner, proceeding *pro se*, attacks the convictions and sentences entered against him by the Twelfth Judicial Circuit Court in DeSoto County, Florida for burglary of an unoccupied dwelling, grand theft, and possession of a concealed handcuff key.

---

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." <u>Rumsfeld v. Padilla</u>, 542 U.S. 426, 436 (2004)(citations omitted).  In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

Id.   Respondent filed a response to the petition (Doc. 14).
Petitioner filed a reply (Doc. 20).

## I.   Background and Procedural History

On September 21, 2006, Petitioner was charged by information
with burglary of an occupied dwelling in violation of Florida
Statute §§ 810.02(1) and (3)(c) (count one); grand theft in
violation of Florida Statute §§ 812.014(1) and (2) (count two);
and possession of a concealed handcuff key in violation of Florida
Statute § 843.012 (count three) (Ex. 15 at Vol. 1 at 8).[2]

After a jury trial, Petitioner was found guilty of burglary
of an unoccupied dwelling, larceny of between $300 and $5000; and
possession of a concealed handcuff key (Ex. 15 at 546).  Petitioner
was sentenced to thirty years in prison on count one and to
consecutive terms of ten and five years in prison on counts two
and three.  Id. at 546-54; (Vol. 1 at 496).  Petitioner's
convictions and sentences were per curiam affirmed by Florida's
Second District Court of Appeal (Ex. 4); Berry v. State, 88 So. 3d
939 (Fla. 2d DCA 2012).

---

[2] Unless otherwise noted, citations to exhibits and volumes
are to those filed by Respondent on February 19, 2015 (Doc. 16).
The record on direct appeal is located in Exhibit 15 and spans
several volumes.  However, each page is consecutively numbered;
therefore, citations to the exhibits in Exhibit 15 will be cited
as (Ex. 15 at ___) without reference to the specific volume number.
The trial transcript is located in volumes VII – IX of Exhibit 15
and will be cited as (T. at ___).

Petitioner filed a post-conviction motion pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") in which he raised four claims of ineffective assistance of counsel (Ex. 6). The post-conviction court denied the Rule 3.850 motion, and Florida's Second District Court of Appeal *per curiam* affirmed (Ex. 7; Ex. 10); <u>Berry v. State</u>, 139 So. 3d 306 (Fla. 2d DCA 2014).

On November 13, 2012, Petitioner filed a state habeas petition in which he alleged ineffective assistance of appellate counsel (Ex. 12). Florida's Second District Court of Appeal denied the petition on January 16, 2013 (Ex. 14).

Petitioner filed the instant petition on August 15, 2014 (Doc. 1).

## II. <u>Governing Legal Principles</u>

### A. **Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")**

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  _White v. Woodall_, 134 S. Ct. 1697, 1702 (2014).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  _Ferguson v. Culliver_, 527 F.3d 1144, 1146 (11th Cir. 2008).  Notably, a state court's violation of _state_ law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); _Wilson v. Corcoran_, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision.  _White_, 134 S. Ct. at 1702; _Carey v. Musladin_, 549 U.S. 70, 74 (2006) (citing _Williams v. Taylor_, 529 U.S. 362, 412 (2000)).  That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." _Marshall v. Rodgers_, 133 S. Ct. 1446, 1449 (2013) (quoting _Yarborough v. Alvarado_, 541 U.S. 652, 664 (2004)).  State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. _White_, 134 S. Ct. at 1706 (quoting _Knowles v. Mirzayance_, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is appropriate only if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). The unreasonable application inquiry "requires the state court decision to be more than incorrect or erroneous," rather, it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell,

540 U.S. at 17-18; Ward, 592 F.3d at 1155.   The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S. Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." Knowles, 556 U.S. at 122.

When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Burt v. Titlow, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting Wood v. Allen, 558 U.S. 290, 293 (2010)).

**B.  Standard for Ineffective Assistance of Counsel**

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell

below an objective standard of reasonableness and that the deficient performance prejudiced the defense. Id.   This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. Burt, 134 S. Ct. at 13, (citing Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89.  In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.  Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).   Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is

reliable." <u>Strickland</u>, 466 U.S. at 687.   That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> At 694.   A reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

### III. <u>Analysis</u>

#### A.   Claim One and Claim Three

In Claim One, Petitioner asserts that he was denied his Sixth Amendment right to a speedy trial (Doc. 1 at 5). Specifically, he argues that he was represented "by a host" of court-appointed attorneys over a three-year pre-trial period, and that conflict existed with all but the last appointee. <u>Id.</u>   Petitioner raised this claim on direct appeal, where it was rejected by Florida's Second DCA (Ex. 2; Ex. 4).   Petitioner asserts that the state court's rejection of his speedy-trial claim is contrary to, or an unreasonable application of, clearly established law as announced in <u>Barker v. Wingo</u>, 407 U.S. 514 (1972).

In Claim Three, Petitioner argues that counsel was ineffective for failing to file a sufficient motion to dismiss on constitutional speedy trial grounds because he (counsel) did not "articulate any of the factors outlined in <u>Barker</u>[.]" (Doc. 1 at 14).   Petitioner raised Claim Three in his Rule 3.850 motion (Ex. 3).   In its rejection of this claim, the post-conviction court

carefully considered the Barker factors and concluded that Petitioner could not demonstrate prejudice from any alleged error because no constitutional speedy trial violation had occurred (Ex. 7). Florida's Second DCA *per curiam* affirmed (Ex. 10). Upon review of the record, the Court concludes that the state courts' denials of Petitioner's constitutional speedy trial claim and attendant ineffective assistance claim were neither contrary to, nor an unreasonable application of, Barker or Strickland.

The Sixth Amendment to the United States Constitution affords criminal defendants the fundamental right to a speedy trial. U.S. Const. amend. VI.[3] Under clearly established federal law, four factors must be balanced in assessing whether a criminal defendant's constitutional right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay; (3) the extent to which the defendant asserted his right to a speedy trial; and (4) any prejudice to the defendant. See Barker, 407 U.S. at 530-32. "None of these factors, taken by itself, is 'either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other

---

[3] This fundamental right is imposed on the states by the Due Process Clause of the Fourteenth Amendment. Klopfer v. North Carolina, 386 U.S. 213, 222-23 (1967).

circumstances as may be relevant.'" Jackson v. Ray, 390 F.3d 1254, 1260-61 (10th Cir. 2004) (quoting Barker, 407 U.S. at 533).

### 1.   Length of delay

A delay is generally presumptively prejudicial "as it approaches one year." Doggett v. United States, 505 U.S. 647, 652 n.1 (1992). However, "presumptive prejudice does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry." Id.(internal quotations omitted).

For purposes of the constitutional analysis, the speedy trial time period commences when the defendant is first arrested or charged and ends when his jury trial begins. See United States v. Marion, 404 U.S. 307, 320-21 (1971). Petitioner was arrested on August 28, 2006 (Ex. 15 at 2), and his trial commenced on September 21, 2009 (Ex. 15 at Vol. VII). Because this period of time exceeds one year, it is presumptively prejudicial and this Court will examine the remaining Barker factors.

### 2.   Reasons for the delay

The second Barker factor focuses on the reason for the delay. Government delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government, while neutral reasons such as negligence are weighted less heavily, and valid reasons for a delay weigh in favor of the government. Barker, 407 U.S. at 531. A delay attributed to the defendant, or

the defendant's counsel, is charged against the defendant. Id. at 529; Coleman v. Thompson, 501 U.S. 722, 753 (1991). Even so, in Vermont v. Brillon, the Supreme Court recognized that "[d]elay resulting from a systemic breakdown in the public defender system could be charged to the State." 129 S. Ct. 1283, 1292 (2009) (internal quotation and citation omitted). Petitioner now contends that his delay is chargeable to the State because it resulted from a "systemic breakdown in the appointment of conflict-free counsel." (Doc. 1 at 8).

The post-conviction court described the reasons for the delay in bringing Petitioner to trial as follows:

> As the Defendant outlined in his motion, he was originally appointed James Beesting, of the Office of the Public Defender (OPD), to represent him in this case. However, several months into the case, Mr. Beesting realized that he knew one of the victims, and he moved to withdraw. Thereafter, the Court appointed a private attorney to represent Defendant, and that attorney worked on Defendant's case for approximately a year. Unfortunately, Defendant and the private attorney had an irreconcilable conflict, and the attorney was permitted to withdraw on April 7, 2008. Accordingly, the Court then re-appointed the OPD, but due to the conflict of Mr. Beesting, the OPD immediately withdrew from the case. As a result, the Court then appointed the Office of Regional Counsel (ORC); however, around that time, Mr. Beesting moved from the OPD to ORC, and for this reason, ORC moved to withdraw.
>
> Because Mr. Beesting was no longer with the OPD, the Court once again appointed OPD to represent Defendant, believing the conflict to

be cured. Nevertheless, Defendant filed a
petition for writ of mandamus in the Second
District Court of Appeal[], seeking to have
new counsel appointed to his case. While this
petition was pending, Mr. Beesting was re-
hired by the OPD. As a result, the OPD once
again moved to withdraw. For this reason, the
Court allowed OPD to withdraw and appointed
another private attorney in March 2009.

Thereafter, Defendant's private counsel was
forced to seek two continuances, as he was
brought up to speed with the case.
Nevertheless, the case still proceeded in a
timely fashion, and a jury verdict was
rendered on September 22, 2009. Accordingly,
on review of the record, it is clear that there
was a valid reason for the delay in this case,
and that the delay was not deliberate.
Therefore, this factor weighs little, if at
all, against the State. See Vermont v.
Brillon, 129 S. Ct. 1283 (U.S. 2009).

Ex. 7 at 5-6).  A review of the record supports the post-conviction

court's conclusion that there were valid reasons for the delays in

this case.

Public Defender James Beesting was appointed to represent

Petitioner soon after his 2006 arrest (Doc. 1 at 5). In April of

2007, Beesting moved to withdraw due to a conflict of interest,[4]

and Drake Buckman was immediately appointed as a special public

---

[4] Petitioner asserts in his petition that "apparently, Mr.
Beesting had a person friendship with *the victim* that spanned many
years but, ironically, it took Mr. Beesting *seven months* to figure
out that he personally knew the victim in the case." (Doc. 1 at 5)
(emphasis in original). Petitioner does not explain how Beesting's
failure to realize that he knew one of the victims is chargeable
to the State.

defender (Ex. 1 at 19-20). Buckman immediately requested a fifteen day extension to "attack any defects as to the information filed herein." (Ex. 15 at 21). Buckman filed a motion for withdrawal of counsel on April 10, 2008, citing a conflict of "such a nature and character that it has gravely and irreparably affected the attorney-client relationship." Id. at 26. Subsequently, Public Defender James Jacobs was appointed to represent Petitioner, but Petitioner asserts that he "immediately" moved to withdraw in May of 2008 (Doc. 1 at 6).[5] Petitioner claims that James Beesting, who now worked for the Second District Office of Criminal Conflict was re-appointed in May of 2008, but moved to withdraw due to the prior conflict. Id. Petitioner alleges that "*the trial court waited 6 months before granting withdrawal and appointing new counsel* Id. (Emphasis in original).[6]

---

[5] Jacobs was apparently concerned that the conflict of interest expressed by Beesting should be imputed to the entire Public Defender's Office. However, Beesting no longer worked for the Public Defender at the time because he had moved to the Second District Office of Criminal Conflict and Civil Regional Counsel. When Beesting was re-hired by the Public Defender's Office, private counsel was appointed (Ex. 15 at 413, 414).

[6] To the extent Petitioner wants the Court to conclude that he was without representation from May of 2008 until November of 2008, such conclusion would not be supported by the record. On September 18, 2008, Jacobs wrote a letter to Petitioner in which he answered a question regarding the issues currently raised in Claims Four and Five. In the same letter, Jacobs wrote:

> We need to move forward on the "real" issues of this case. I do thank you both personally

Despite Petitioner's emphatic implication that he was without counsel for six months, in his next paragraph, he asserts that Jacobs was re-appointed in July of 2008 and remained his counsel until March of 2009 when Mark Maynard was appointed (Doc. 1 at 6). Indeed, during this time, Jacobs worked diligently on Petitioner's defense, filed numerous motions, and wrote letters to Petitioner.[7]

---

> and professionally for your compliments about how I presented your motions this past Monday.
>
> . . .
>
> Mr. Steven Watson and I have been in contact about your case. He is coming out here the morning of October 02 so we can discuss this matter and to see you exclusively. I strongly urge you to have patience and realize we have given your case the highest of priorities.

(Ex. 15 at 171). In addition to Jacobs' letter, Petitioner filed a lawsuit in this Court on July 15, 2008 in which he complained that "Jacobs has been re-appointed yet again, and refuses to work on my case because he still feels that a conflict exists, despite the Judges' finding of otherwise." (MDFL Case No. 2:08-cv-559-JES-DNF at Doc. 1). Even Petitioner's current petition states that Jacobs was re-appointed as counsel in July of 2008 (Doc. 1 at 6).

[7] These motions include: (1) July 29, 2008 Motion for Nelson Inquiry and Faretta Hearing (Ex. 15 at 31); (2) July 30, 2008 Motion to Dismiss Count Three (Ex. 15 at 32); (3) August 20, 2008 Amended and Verified Motion to Dismiss Count (3) (Ex. 15 at 43); (4) September 11, 2008 Motion for Change of Venue (Ex. 15 at 52); (5) October 2, 2008 Motion for Recusal of Trial Court Judge (Ex. 15 at 56); (6) October 2, 2008 Motion for Severance (Ex. 15 at 58); (7) October 2, 2008 Amended Motion for Change of Venue (Ex. 15 at 60); (8) October 3, 3008 Brief in Support of Motion for Severance (Ex. 15 at 64); (9) December 23, 2008 Motion to Strike Witnesses (Ex. 15 at 205); (10) January 13, 2009 Motion to Dismiss Based on Violation of Speedy Trial (Ex. 15 at 208); (11) January 28, 2009 Motion to Recuse (Ex. 15 at 255); (12) February 19, 2009 Counsel's Motion to Withdraw (Ex. 15 at 339); (13) February 19,

Meanwhile, Petitioner filed a federal lawsuit against Jacobs on July 16, 2008 in which he asserted that "Jacobs refuses to work on my case" (MDFL Case No. 2:08-cv-559 at Doc. 1).  Petitioner also filed a Florida Bar Complaint against Jacobs.  Petitioner then filed an emergency motion for a <u>Nelson</u> hearing in which he asserted that Jacobs' representation "fails to meet professional norms," after which Jacobs filed a motion to withdraw due to Petitioner's apparent dissatisfaction with his representation (Ex. 15 at 322, 339).  By that time, Beesting had been re-hired by the Office of the Public Defender and a conflict once again existed. <u>Id.</u> at 414.

Mark Maynard was appointed as defense counsel on March 18, 2009 (Ex. 15 at 414).  Subsequently, on September 3, 2009, Petitioner filed a grievance against Maynard with the Florida Bar. <u>Id.</u> at 428.  Maynard sought to withdraw, asserting that there was no longer a conflict with the Office of Regional Counsel (because Beesting had gone back to the Public Defender's Office) and that it should represent Petitioner. <u>Id.</u> at 428.  Although the record does not reflect whether Maynard's motion to withdraw was considered, Maynard represented Petitioner at his trial.

Petitioner does not explain how Beesting's conflict and then subsequent job changes can be attributed to the State for speedy

--------------------------------------

2009 Emergency Motion to Stay (Ex. 15 at 341); and February 23, 2009 Motion to Permit Additional Peremptory Challenges (Ex. 15 at 347).

trial purposes.  To the contrary, these are issues that are solely attributable to defense counsel, and the Supreme Court is clear that because "the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation, delay caused by the defendant's counsel is also charged against the defendant." Brillon, 129 S. Ct. at 1290-91 (alteration in original, quotation omitted).    Likewise,  Petitioner's  numerous  motions,  bar complaints, interlocutory appeals, and federal lawsuit cannot be charged against the State. See United States v. Corbin, 607 F. App'x 136, 139 (3d Cir. 2015) (a defendant's continuance requests and  numerous  pretrial  motions  cannot  be  attributed  to  the government); United States v. Loud Hawk, 474 U.S. 302 (1986) ("A defendant who resorts to an interlocutory appeal normally should not be able upon return to the district court to reap the award of dismissal  for  failure  to  receive  a  speedy  trial).    Finally, although Petitioner now complains that he "languished" for six months after Maynard's appointment (Doc. 1 at 7), on three separate occasions,  Plaintiff  either  requested  or  stipulated  that  the trial, which had been scheduled on February 23, 2009, be delayed. Id. at 341, 423, 427.   This delay cannot be attributed to the State.

Because  the  delay  in  bringing  Petitioner  to  trial  can  be attributed solely or primarily to Petitioner, the second Barker factor weighs heavily against Petitioner. Brillon, 129 S. Ct. at

1291 ("An assigned counsel's failure to move the case forward does not warrant attribution of delay to the State.")(internal quotations omitted).

### 3.   Petitioner's request for a speedy trial

Turning to the third factor, the "failure to assert the right [to a speedy trial] will make it difficult for a defendant to prove that he was denied a speedy trial." Barker, 407 U.S. at 532.  Not every invocation of the right will do.  Defendants must "appropriately assert[]" their speedy-trial rights, as viewed in "light of [their] other conduct." Loud Hawk, 474 U.S. at 314. Thus, it is possible for a defendant to insufficiently assert his speedy-trial rights despite "repeatedly mov[ing] for dismissal on speedy trial grounds." Id.

Petitioner asserts, without explanation, that "[t]he record is replete with examples of Petitioner asserting his Sixth Amendment right to a speedy trial on numerous occasions." (Doc. 1 at 8).  Upon review of the record, the Court finds a single motion, written on January 13, 2009, in which Petitioner sought dismissal of his claim due to a violation of his speedy trial right (Ex. 15 at 208).  However, Petitioner did not ask for a trial at this time, and when the State filed a demand for a trial sixteen days later, Petitioner filed an emergency motion to stay. Id.at 341. Moreover, as noted by the State in its own demand for a speedy trial, Petitioner asked for 24 continuances throughout the pre-

trial period. Id. at 263.   This does not show that Petitioner actually wanted a speedy trial.   To the contrary, like the defendant in Barker, "the record strongly suggests that while [Petitioner] hoped to take advantage of the delay . . . and thereby obtain a dismissal of the charges, he definitely did not want to be tried." Barker, 407 U.S. at 535; United States v. Frye, 489 F.3d 201, 212 (5th Cir. 2007) ("A motion for dismissal is not evidence that the defendant wants to be tried promptly."); United States v. Kresler, 392 F. App'x 765, 771 (11th Cir. 2010) ("[W]here a defendant is aware that charges are pending against him, his failure to make any effort to secure a timely trial on them (and his apparent desire to avoid one) manifests a total disregard for his speedy trial right.") (internal quotation omitted).

The third Barker factor weighs heavily in the State's favor.

### 4. Prejudice

In assessing whether a Petitioner has alleged prejudice with sufficient particularity, the Court must focus on the interests the speedy-trial right was designed to safeguard: (1) "prevent[ing] oppressive pretrial incarceration"; (2) "minimiz[ing] anxiety and concern of the accused"; and (3) "limit[ing] the possibility that the defense will be impaired." Barker, 407 U.S. at 532.   Petitioner asserts that "prejudice is evident considering that the primary evidence in the case was the *eyewitness* identification of Petitioner by a State witness.

Eyewitness accounts are inherently questionable/unreliable to begin with, but when said identification and account is dragged on for over 3 years then the probability of mistaken identity increases." (Doc. 1 at 8) (emphasis in original).

Petitioner has not disclosed any particular instance in which a witness had difficulty remembering facts that would have favored his defense.  The mere possibility of prejudice is not sufficient to support Petitioner's position that his speedy trial rights were violated. Loud Hawk, 474 U.S. at 315. Moreover, Petitioner's conviction was not based solely on eyewitness testimony.  Rather, the strongest evidence against Petitioner was a detailed and lengthy recorded confession that he made to his mother. See discussion infra Part III(D). Finally, the Eleventh Circuit has consistently held that "conclusory assertions of prejudice, including unsubstantiated allegations of witnesses' faded memories, are insufficient to constitute proof of actual prejudice." United States v. Hayes, 40 F.3d 362, 366 (11th Cir. 1994); United States v. Woodley, 484 F. App'x 310, 319 (11th Cir. 2012) ("The defendant must proffer more than conclusory assertions of prejudice or unsubstantiated allegations of witnesses' faded memories") (internal citations omitted).  The Fourth Barker factor weighs heavily in favor of the State.

Because the last three Barker factors favor the State, Petitioner has not established that the state court's rejection of

this claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S. Ct. at 1702. Likewise, because even a facially sufficient motion for dismissal based on a constitutional speedy trial violation would have been denied, Petitioner cannot demonstrate Strickland prejudice from counsel's failure to include a discussion of the Barker factors in his motion. Claims One and Three are denied pursuant to 28 U.S.C. § 2254(d).

**B.  Claim Two**

Petitioner asserts that each of his trial attorneys was ineffective for failing to file notices of expiration of speedy trial based on Florida's speedy trial rule (Doc. 1 at 10). Petitioner raised this claim in his Rule 3.850 motion where it was denied by the post-conviction court as follows:

> In his first ground, Defendant alleges that his counsel was ineffective for failing to file a notice of expiration of speedy trial pursuant to Fla. R. Crim. P. 3.191. However, Defendant acknowledges in his motion that the reason his trial was continued multiple times was so that he could obtain conflict-free counsel. Fla. R. Crim. P. 3.191(j) provides that if an accused is not brought to trial within the designated periods of time, his pending motion for discharge should be granted, unless the accused is unavailable for trial, among other reasons. In this regard, an accused is considered unavailable when his counsel has been discharged due to a conflict of interest and there has been an inadequate opportunity for newly appointed counsel to

> prepare the case for trial. See Brown v.
> State, 328 So. 2d 497 (1976). Defendant
> acknowledges this point in his motion when he
> states that he could not have been brought to
> trial within the recapture period without
> violating his right to conflict-free counsel.
> Therefore, because Defendant in this case was
> not "continuously available" for trial, he
> would not have been eligible for discharge on
> speedy trial grounds. Accordingly, Defendant
> suffered no prejudice from his counsel's
> failure to file a notice of expiration of
> speedy trial pursuant to Fla. R. Crim. P.
> 3.191.

(Ex. 7 at 3). The post-conviction court's rejection of this claim

was *per curiam* affirmed by Florida's Second DCA (Ex. 10).

Florida's speedy trial rule provides that a trial shall

commence within 175 days of arrest when a defendant is charged

with a felony. Fla. R. Crim. P. 3.191(a). The speedy trial period

commences when a person is taken into custody. After expiration

of the prescribed time, a defendant may file a "notice of

expiration of speedy trial time," and within five days of filing

the notice, the state court shall hold a hearing on the notice.

With some exceptions, trial must thereafter commence within ten

days or the defendant is forever discharged from the crime. See

Fla. R. Crim. P. 3.191(p)(3).

A defendant is bound by a demand for speedy trial. In other

words, he cannot make a speedy trial demand unless he is actually

prepared to go to trial:

> A demand for speedy trial binds the accused
> and the state. No demand for speedy trial

> shall be filed or served unless the accused
> has a bona fide desire to obtain a trial sooner
> than otherwise might be provided. A demand for
> speedy trial shall be considered a pleading
> that the accused is available for trial, has
> diligently investigated the case, and is
> prepared or will be prepared for trial within
> 5 days. A demand filed by an accused who has
> not diligently investigated the case or who is
> not timely prepared for trial shall be
> stricken as invalid on motion of the
> prosecuting attorney. A demand may not be
> withdrawn by the accused except on order of
> the court, with consent of the state or on
> good cause shown. Good cause for continuances
> or delay on behalf of the accused thereafter
> shall not include nonreadiness for trial,
> except as to matters that may arise after the
> demand for trial is filed and that reasonably
> could not have been anticipated by the accused
> or counsel for the accused. A person who has
> demanded speedy trial, who thereafter is not
> prepared for trial, is not entitled to
> continuance or delay except as provided in
> this rule.

Fla. R. Crim. P. 3.191(g).  Petitioner admits he would not have been ready to go to trial within ten days of a demand because he refused to waive any conflict with counsel (Doc. 1 at 11). Therefore, a demand for a speedy trial would not have been a "bona fide desire to obtain a trial sooner than otherwise might be provided[.]"  Fla. R. Crim. P. 3.191(g).  Accordingly, defense counsel could not have filed a speedy trial demand in good faith. The constitution does not required defense counsel to engage in unethical or unprofessional conduct.  Lockhart v. Fretwell, 506 U.S. 364, 382 (1993) ("[I]neffective-assistance claims predicated on failure to make wholly frivolous or unethical arguments will

generally be dispensed with under <u>Strickland</u>'s first prong[.]");

<u>United States v. Cronic</u>, 466 U.S. 648, 657 (1984) ("Of course, the

Sixth Amendment does not require that counsel do what is impossible

or unethical."); <u>Nix v. Whiteside</u>, 475 U.S. 157, 166 (1986)

("Although counsel must take all reasonable lawful means to attain

the objectives of the client, counsel is precluded from taking

steps or in any way assisting the client in presenting false

evidence or otherwise violating the law.").

The state courts' rejection of this claim was neither contrary

to <u>Strickland</u> nor based upon an unreasonable determination of the

facts.  Claim Two is denied pursuant to 28 U.S.C. § 2254(d).

**C.   Claim Four and Claim Five**

In Claim Four, Petitioner asserts that trial counsel was

ineffective for failing to subpoena both the video of Petitioner

accepting a plea and testimony of his prior counsel who attended

the plea hearing (Doc. 1 at 17).  In Claim Five, Petitioner asserts

that the trial court and the State colluded to delete record

evidence of Petitioner accepting a plea on November 15, 2006. <u>Id.</u>

at 20.  Petitioner does not contest that the plea into which he

allegedly entered was made contingent upon the victim accepting

the plea.  However, he argues that the plea was final <u>prior</u> to the

state making its offer contingent upon the victim's acceptance

(Ex. 15 at 151).

Petitioner raised both of the instant claims as Ground Three of his Rule 3.850 motion (Ex. 6), and they were denied by the post-conviction court as follows:

> In his third ground, Defendant makes two claims, both related to his supposed acceptance of an early plea offer. In his first claim, Defendant argues that his counsel was ineffective for failing to subpoena both the video of Defendant accepting the plea and the testimony of his prior counsel who attended the plea hearing. This claim is without merit.
>
> On November 15, 2006, the date that Defendant claims he entered his plea, it appears that the parties started to proceed with a plea agreement, and then chose to delay the matter to a later date. In a letter to Defendant, Mr. Beesting, who was Defendant's attorney at that time, described why the plea was not taken:
>
>> [I]t is my recollection that after negotiation with Guy Flowers, Assistant State Attorney, the plea agreement contained in the Acknowledgment and Waiver of Rights form was reached, subject to the State Attorney giving final approval. I believe that the final approval was contingent on Mr. Flowers obtaining approval to the plea by the victim alleged . . . It is my recollection (although I cannot say positively) that there was a discussion (which does not appear in the transcript furnished) regarding Mr. Flowers' unavailability or lack of approval by the victim, which resulted in the entire case being put over to the next docket. It is also my recollection that the State Attorney's office soon thereafter denied final approval, and I believe I was informed that the denial was based on objection to the plea by the victim alleged.

Accordingly, both the transcript of the supposed plea hearing and the recollection of Defendant's prior counsel support a conclusion that there was no plea taken on November 15, 2006.

In addition, the record reflects that Defendant's subsequent attorney did, in fact, investigate this mater. In a letter to the Defendant, counsel stated the following:

> I have extensively reviewed the Court file, documents in our files, and also have made requests to the Court Reporter as to any formal colloquy that would have finalized the plea agreement. I also carefully listened to statements made by Mr. Flowers on the record to the Court. Nowhere does there appear to have been a formal acceptance of a plea. In fact, I did locate in our files the original of the written plea and waiver form. Had the actual plea taken place, that original would be in the Court file.

Moreover, even the Official Court Reporter confirmed that there was no video from this alleged plea hearing. Accordingly, based on the foregoing, the Court cannot conclude that defense counsel was ineffective for failing to subpoena the non-existent video or the adverse testimony of Defendant's prior counsel.

In his second claim, Defendant alleges that "the Court and the State colluded to willfully delete record evidence of the Defendant accepting the November 15, 2006 plea." Based on the record as discussed above, this claim is completely without merit, and requires no further discussion. Accordingly, because both of the claims in this ground are meritless, Ground Three is denied.

(Ex. 7 at 8-9) (internal citations to the record omitted). The post-conviction court's rejection of this claim was *per curiam* affirmed by Florida's Second DCA (Ex. 10).

- 25 -

The post-conviction court's conclusion that there was not a formal acceptance of the November 15, 2006 plea is a finding of fact.  A determination of a factual issue by a state court is presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).  Petitioner has presented no evidence that a plea was finalized.

On September 21, 2009, a hearing was held on Petitioner's claim that he had already entered a plea (Ex. 15 at Vol. VI).  At the hearing, Petitioner asserted that he entered a plea in November of 2006 which had been accepted by the trial court. Id.  After listening to the evidence, the court stated that it did not recollect accepting any judgment and sentence, and told Petitioner that he (Petitioner) was "the only one who believe[d] [he] entered a plea." Id. at 104.  Prior to trial, Petitioner again argued that he had already entered a plea.  The Court explained:

> Mr. Berry, we've been over that.  You were fixing to enter a plea and the plea for whatever reason was not accomplished.  You [were] never sentenced, the plea dialogue was never finished.  You were never sentenced to anything on it.  And we actually gave a continuance to maybe enter a plea at a later time.  You did not enter a plea.  I don't know why you can't get that through your head.  You didn't do it.
>
> The transcript speaks for itself, and we got the transcript, and Mr. Beesting's recollection also.  And his recollection is like everybody else, you were the only one who has a recollection different from anybody else.

(T. at 9-10).   In addition to the court's conclusion that it had not accepted a plea, both Beesting and Jacobs informed Petitioner that no actual plea had taken place because acceptance was contingent upon the victim's approval which she refused to give (Ex. 15 at 171, 309).   In a letter to Petitioner, Beesting explained that entry of the contingent plea would have allowed Petitioner a more rapid entry into a treatment facility had the state attorney given approval. Id. at 309.   Finally, the court reporter informed Petitioner that there was no video tape from the November 15, 2006 hearing and that the limited transcript available was the entire official transcript of what transpired. Id. at 152.[8]

Petitioner has not rebutted the state court's factual conclusion that he did not formalize his November 15, 2006 guilty plea.   Accordingly, he has not demonstrated Strickland prejudice from counsel's failure to subpoena Beesting or to seek video evidence of the alleged colloquy.   Likewise, Petitioner's incredible assertion that the State, the trial court judge, and his own counsel conspired against him to deprive him the benefit of a valid plea agreement is unsubstantiated and conclusory. Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) ("A petitioner is not entitled to an evidentiary hearing, however, when his claims

---

[8] The limited transcript indicates that after the plea was explained to Petitioner, defense counsel suggested that the plea hearing be delayed until December 14, 2006 (Ex. 15 at 149).

are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible.") (internal quotations omitted).

The state courts' denials of Claims Three and Four were neither contrary to or an unreasonable application of clearly established federal law nor based upon an unreasonable determination of the facts. These claims are denied pursuant to 28 U.S.C. § 2254(d).

### D. Claim Six

Petitioner asserts that his Fourth Amendment rights were violated "when he was taken forcefully from place of lawful encounter, handcuffed, driven to alleged crime scene to be suggestively identified." (Doc. 1 at 23). Specifically, Petitioner asserts that he was unlawfully detained by the Arcadia Sheriff's Office and transported against his will to the crime scene "without founded suspicion [of] criminal activity" where he was identified as the person seen fleeing from the victim's home. Id. Petitioner asserts that the police should have held him "at place of lawful encounter, and called in to the have witness transported to said location for a show-up identification." Id. at 24. Petitioner raised this claim on direct appeal where it was denied by Florida's Second DCA (Ex. 4). Upon review of the record, the Court concludes that Petitioner is not entitled to habeas relief on this claim.

In § 2254 proceedings, a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the standard set forth by Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Fry v. Pliler, 551 U.S. 112 (2007). Pursuant to Brecht, a constitutional error does not warrant habeas relief unless it "had substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637 (internal quotation omitted). It is unnecessary for this Court to determine whether Petitioner's brief pre-arrest detention and transportation resulted in a Fourth Amendment violation because any error in denying his motion to suppress an allegedly tainted identification was harmless.

In addition to the identification of Petitioner as the person seen running from the victim's home (T. at 183-84), Petitioner was found with the victim's jewelry. Id. at 194-85. However, the most incriminating evidence was Petitioner's recorded statements during a prison telephone conversation with his mother. Id. at 280-88. In the statement, Petitioner admitted that he robbed the victim's house and described exactly what had happened:

> Anyway, I'm in the house, right?  I had the shit bagged up by the back door, ready to go. Camcorder, fucking DVD player and bullshit all in a little suitcase ready to go.
>
> Well, I already had my laptop, but I needed the power cords and all the little hookups, but those went through the back of the entertainment center.  So I'm trying to get

all the wires through the hole in the back of
the board, you know, but it's all inter-
tangled with all the stereo and TV shit.   So
I'm working blind.   And one of the little
things that I would do is I would - when I
first go in, I'd - I'd try to establish which
door they use, the main door, right?

. . .

At this house I had the sliding glass door
open, ready to go.   I already got the shit.
Now,   I   need   the   power   cord,   because
(inaudible) ain't going to take it without the
power cord - well, he'd a took it, but it's
going to cut what I got in half.

. . .

Well, I'm getting it and I see - I'm getting
the cords and I see like light reflection go
on the wall. . . . It was a car pulling into
the driveway.   This happened at like 1:04. .
. I look and she's getting out of her damn
black SUV, going and checking her mailbox. .
. I get the hell on right then.

. . .

Didn't bring nothing.   But I had some jewelry
in my pocket.   I had it in - I'm wearing khaki
shorts, right? Cargo shorts; you know what I
mean?  Down to your knees. I'm wearing a black
T-shirt   with   La   Espiranza,   this   Mexican
restaurant.

Anyway, I hauled ass.   I cut through three
back yards.   On the third house down, a lady
- an old lady seeks me cutting through her
back yard.

. . .

All right.   She sees me through her fucking
little kitchen window of her back - the back
of the house.   And fucking she come then, I
cut across, I'm back to where I'm hauling ass.

(T. at 280-84).   Given Petitioner's explicit and detailed admission to his mother, which substantiated the witness' identification and was played for the jury, this Court concludes that any impermissible identification did not have "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637.   Claim Six is denied.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.   Certificate of Appealability[9]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).   Rather, a district court must first issue a certificate of appealability ("COA").   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282

---

[9] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Id.   As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

(2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003).  Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

ACCORDINGLY, it is hereby **ORDERED**:

1.   The Florida Attorney General is dismissed from this action.

2.   Petitioner's 28 U.S.C. § 2254 petition is **DENIED**.

3.   Petitioner is **DENIED** a certificate of appealability.

4.   The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___2nd___ day of November, 2015.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Charles Berry
Counsel of Record